United States Court of Appeals,

Fifth Circuit.

No. 91–7193.

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellant,

v.

ERNST & YOUNG, et al., Defendants–Appellees.

Aug. 3, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and WILLIAMS and DUHÉ, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The Federal Deposit Insurance Corporation brought suit against Ernst & Young. The suit asserts that Arthur Young & Company and its successor Ernst & Young both negligently audited Western Savings Association and breached their contracts to audit Western Savings. The district court dismissed the breach of contract action for failure to state a claim. The court also granted Ernst & Young's motion for summary judgment on the negligence claim. The Federal Deposit Insurance Corporation appeals the two rulings.

I. FACTS

On August 30, 1982, Jarrett E. Woods, Jr. purchased 100% of Gatesville Savings and Loan Association's stock. He subsequently transferred the stock to Western Capital Corporation and changed the name of Gatesville Savings to Western Savings Association ("Western"). Woods also owned all of Western Capital Corporation. Woods, therefore, was Western's sole owner.

Woods effectively dominated and controlled Western. Upon acquiring Western, he expanded the board of directors and appointed himself as chairman and chief operating officer. He was also Western's chief executive officer, and he served on its executive, loan, audit, compliance, and credit policy committees. He further held various offices in Western's wholly-owned subsidiaries, including

Westwood Mortgage Company and WS Service Corporation.

Pursuant to his domination and control of Western, Woods dramatically changed its policies and practices. Western aggressively began to pursue complex commercial ventures that often were based upon unsafe and unsound underwriting practices. Western's commercial real estate transactions generated paper profits, making Western appear solvent. The FDIC further alleges that Woods made false entries in Western's books with intent to deceive Western's board and government regulators, and he conspired to misapply Western's funds. The FDIC claims these policies were part of a scheme by Woods to defraud Western's depositors and creditors.

By 1984, Western's financial condition had seriously deteriorated. On June 22, 1984, as a result of numerous violations of Bank Board regulations, the Federal Home Loan Bank Board issued a Temporary Order to Cease and Desist Western's improper commercial lending practices. In accordance with the Cease and Desist Order, Western engaged Arthur Young to review Western's financing transactions and conduct independent audits for the years ending December 31, 1984 and December 31, 1985. Arthur Young's engagement letters specified its duties.

Arthur Young completed its audits and certified that it conducted the audits in accordance with generally accepted accounting principles. Arthur Young indicated that Western had a net worth at the end of 1984 of over $41 million. In reality, Western was insolvent by more than $100 million. Similarly, Arthur Young's 1985 report certified that Western had a net worth of over $49 million when it was actually insolvent by over $200 million.

On September 12, 1986, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as Western's Receiver. Under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821a, all FSLIC assets, including this claim, were transferred to the FSLIC Resolution Fund, which the Federal Deposit Insurance Corporation

("FDIC") now manages.

On March 1, 1990, the FDIC filed a two-count complaint against Ernst & Young ("EY") alleging negligence and breach of contract.[1] EY is a general partnership organized in 1989 as successor to Ernst & Whinney and Arthur Young. The FDIC alleges that Western suffered $560 million in damages resulting from Arthur Young's audits because if the audits had been accurate, Western's board of directors or government regulators would have prevented further losses. Critically important to the ultimate resolution of the case is the FDIC's decision to bring this suit only as assignee of a claim by Western against the auditors. The FDIC had authority to sue EY in its own behalf or on behalf of Western's creditors, but it chose not to do so.

## II. STANDARD OF REVIEW

The FDIC appeals the district court's summary judgment and also its dismissal for failure to state a claim. In reviewing a summary judgment, we apply the same standard of review as the district court, and we review questions of law *de novo. Christopherson v. Allied–Signal Corp.,* 939 F.2d 1106, 1109 (5th Cir.1991) (en banc), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992). A summary judgment is proper if "after adequate time for discovery and upon motion, ... [the non-movant] ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review the record in the light most favorable to the non-movant. *Ayo v. Johns–Manville Sales Corp.,* 771 F.2d 902, 904 (5th Cir.1985). We also apply a *de novo* standard of review to a district court's ruling on a Rule 12(b)(6) motion for failure to state a claim. *Barrientos v. Reliance Standard Life Ins. Co.,* 911 F.2d 1115, 1116 (5th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 795, 112 L.Ed.2d 857 (1991).

---

[1]In separate actions, the FDIC also sued Woods individually for the losses, and the government indicted Woods for criminal behavior.

## III. FDIC AS ASSIGNEE

The most significant factor in the present case's outcome is the FDIC's decision to sue only as Western's assignee. The FDIC did not sue on its own behalf or on Western's creditors' behalf. Essentially, therefore, this is a client case in which a client is suing its auditor. Consequently, the effect of the auditor's alleged negligence on third parties is legally irrelevant to the determination of the present case. "An assignee obtains only the right, title, and interest of his assignor at the time of his assignment, and no more. Accordingly, an assignee may recover only those damages potentially available to his assignor." *State Fidelity Mortgage Co. v. Varner,* 740 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (citations omitted).

The FDIC correctly argues that certain situations require the courts to treat the FDIC differently from other assignees. The *D'Oench Duhme* doctrine, for example, precludes a borrower from asserting defenses against the FDIC based upon secret unrecorded side agreements the borrower entered into with the failed institution. *Campbell Leasing, Inc. v. F.D.I.C.,* 901 F.2d 1244, 1248 (5th Cir.1990). Moreover, strong federal policy dictates that the FDIC as corporate insurer takes greater rights than the failed bank. *In re Jeter,* 48 B.R. 404, 410 (Bankr.N.D.Tex.1985).

Relying upon *F.D.I.C. v. Cherry, Bekaert & Holland,* 742 F.Supp. 612 (M.D.Fla.1990), the district court declined to treat the FDIC differently from other assignees under the facts of this case. *Cherry* is similar to the present case because the FDIC was suing a partnership of certified public accountants for their negligent audit of a bank. The *Cherry* court held the FDIC as assignee was subject to the same defenses as could be asserted against other assignees because "the FDIC does not cite any statutory authority affording it special protection ... [T]he special protections afforded the FDIC by *D'Oench* and its progeny are limited in scope.... [T]his Court sees no reason that the FDIC in this case should be treated differently than any other assignee." *Id.* at 614–15. Other cases stating the same controlling law are *F.D.I.C. v. Harrison,* 735 F.2d 408, 412 (11th Cir.1984) ("[W]hen FDIC acts in its corporate capacity as receiver, its liability must be determined in the same fashion as that

of a private party....  It has been held that when FDIC acts as a receiver and liquidating agent for a failed bank, as it did here, it merely "stands in the shoes of the insolvent bank.' ... We see no reason not to apply the traditional rules of equitable estoppel to the conduct of FDIC in this case") (citations omitted); *F.D.I.C. v. Jenkins,* 888 F.2d 1537, 1545–46 (11th Cir.1989) ("The FDIC urges this Court ... to fashion a federal common law rule of priority....  Any such priority over third-party lawsuits will have to come from Congress, not this Court").

We affirm the district court's holding that the FDIC is not entitled to special protection when it brings a tort claim against a third party on behalf of a defunct financial entity.  No statutory justification or public policy exists to treat the FDIC differently from other assignees when the FDIC as a matter of choice in this case has limited its claim to that of an assignee.

## IV. NEGLIGENCE

The FDIC sued EY claiming Arthur Young negligently conducted the audit, causing $560 million in losses.  The district court granted EY's motion for summary judgment because neither Woods nor Western relied upon the audit.  The FDIC contends that the district court erred because reliance is not an element of a negligence claim.

Under Texas law, a cause of action based upon negligence requires proof of three essential elements:  the existence of a duty on the part of one party to another;  breach of that duty;  and injury proximately caused by the breach. *Lucas v. Texas Industries, Inc.,* 696 S.W.2d 372, 376 (Tex.1984); *Dion v. Ford Motor Co.,* 804 S.W.2d 302, 309 (Tex.App.—Eastland 1991, writ denied); *Bellaire Kirkpatrick Joint Venture v. Loots,* 826 S.W.2d 205, 211 (Tex.App.—Fort Worth 1992, writ denied). The Texas Supreme Court has not expressly held that injury caused by reliance is a necessary element of negligence.  In the present case, however, a claim that reliance is not a component of causation strains credulity. "Proximate cause includes two essential elements:  (1) foreseeability, and (2) cause in fact....  Cause in fact means that the act or omission was a substantial factor in bringing about the

injury and without which no harm would have occurred." *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980); *see also, City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987); *Bellaire Kirkpatrick,* 826 S.W.2d at 211. If nobody relied upon the audit, then the audit could not have been a "substantial factor in bringing about the injury." *See also, Craig v. Metro Bank of Dallas,* 601 S.W.2d 734, 736 (Tex.Civ.App.—Dallas 1980, no writ).

The issue, therefore, is whether either Woods or Western relied upon Arthur Young's audit to cause injury to Western. The parties do not dispute that Woods did not rely on the EY audit. Woods' risky lending practices placed Western in its precarious financial condition. He was cognizant of the financial condition as is shown by his false entries in Western's books and records to deceive auditors and examiners. The district court held that Woods' knowledge could be imputed to Western's board of directors, and, therefore, Western did not rely on the Arthur Young audit. The FDIC challenges the imputation of Woods' knowledge to Western.

Generally, courts impute a bank officer or director's knowledge to the bank unless the officer or director acts with an interest adverse to the bank. *F.D.I.C. v. Lott,* 460 F.2d 82, 88 (5th Cir.1972). In Texas, whether an employee's fraud is attributable to a corporation depends on whether the fraud was on behalf of the corporation or against it:

> Fraud on behalf of a corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the stockholders are the principal if not only victims; their equities vis-a-vis a careless or reckless auditor are therefore strong. But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are beneficiaries of the fraud ... But the primary costs of a fraud on the corporation's behalf are borne not by the stockholders but by outsiders to the corporation, and the stockholders should not be allowed to escape all responsibility for such a fraud, as they are trying to do in this case.

*Greenstein, Logan & Co. v. Burgess Mktg., Inc.,* 744 S.W.2d 170, 190–91 (Tex.App.—Waco 1987, writ denied), *quoting, Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 456 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

In the present case, Woods acted on the corporation's behalf because by serving Western, he served himself, Western's sole owner. As the sole owner, Woods' fraudulent activities on Western's behalf benefitted himself and injured outsiders to Western—i.e. depositors and creditors. Accordingly, under *Greenstein,* Woods acted on Western's behalf, and, therefore, his knowledge is imputable to Western.

Not only do the facts of this case satisfy the *Greenstein* standard for imputation, but common sense also supports imputing Woods' knowledge to Western. Woods is Western's sole shareholder, and, as the FDIC's complaint stated, Woods "dominated and controlled Western's board of directors from the time he took control of Western."[2] As evidence of his domination and control, Woods, upon acquiring Western, expanded the board of directors and made himself chairman of the board.

"Because a corporation operates through individuals, the privity and knowledge of individuals at a certain level of responsibility must be deemed the privity and knowledge of the organization, "else it could always limit its liability.' ... Where the level of responsibility begins must be discerned from the circumstances of each case." *Continental Oil Co. v. Bonanza Corp.,* 706 F.2d 1365, 1376 (5th Cir.1983), *quoting, Corvell v. Phipps,* 317 U.S. 406, 410–11, 63 S.Ct. 291, 293, 87 L.Ed. 363 (1943). In the present case, the level of responsibility must extend at least to the sole owner who dominated the board of directors. *See also, Duval County Ranch Co. v. Wooldridge,* 674 S.W.2d 332, 335 (Tex.App.—Austin 1984, no writ) ("Manges' fraud is attributable to the DCRC, as appellants conceded at trial that Manges was acting for DCRC and was sole owner thereof").

The FDIC argues that even if neither Woods nor Western relied upon the audit, Arthur Young's alleged negligence caused the losses because had the audits been accurate, someone, such

---

[2]The FDIC submitted the affidavits of three outside directors, each of whom stated that he would have made different decisions if the Arthur Young audit had indicated that Western had a negative net worth. The affidavits do not nullify Woods' domination because the three directors were a minority of the eight member Board of Directors, and the three members could not dictate Western's activities.

as Western's creditors or government regulators, would have "rescued" Western. This argument is flawed because it is not an appropriate argument for Western, or its assignee, to make. Western cannot claim it should recover from EY for not being rescued by a third party for something Western was already aware of and chose to ignore. Neither can Western's assignee make the claim. The FDIC in its own capacity or Western's creditors might be able to make this claim, but the FDIC brought this suit only on Western's behalf.

Assuming, for the sake of argument, that Arthur Young negligently audited Western's books, we do not hold that EY can never be held liable for its negligence. Either Western's creditors or the FDIC on its own behalf may have a cause of action against EY. Moreover, we are not holding that an auditor is never liable to a corporation when a corporation's employee or agent acts fraudulently on the corporation's behalf. We limit our holding narrowly to the facts of this case under Texas law—i.e. the FDIC, as assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied.

## V. CONTRACT CLAIM

In addition to the negligence claim, the FDIC's suit included a breach of contract claim. The FDIC maintains Arthur Young breached the terms of its engagement letters. Asserting that the FDIC's contract claim failed to state a cause of action, EY sought a dismissal of that claim under Fed.R.Civ.P. 12(b)(6). The district court, finding that the FDIC's contract claim was factually identical to its tort claim, allowed FDIC time to amend its complaint. Subsequent to the FDIC's amendment, the district court dismissed the breach of contract claim for failure to state a claim upon which the court could grant relief. The FDIC appeals the decision.

The district court correctly recognized that a valid distinction exists between a contract and a tort action against professionals. In the present case, however, the gravamen of both of the FDIC's claims was that Arthur Young violated its duty of professional care in auditing Western's financial

statements. Under Texas law, a claim for failure to use professional care is a tort claim. *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ) ("[A]lleged breaches of duty by professionals to their clients are in the nature of tort claims as opposed to contract claims"); *Sledge v. Alsup,* 759 S.W.2d 1, 2 (Tex.App.—El Paso 1988, no writ) ("A cause of action for [professional] malpractice is in the nature of a tort ... Nothing is to be gained in fracturing that cause of action into three or four different claims and sets of special issues. That is not in accordance with the recent trend in this state to simplify issues which are presented to a jury"); *FSLIC v. Texas Real Estate Counselors, Inc.,* 955 F.2d 261, 265 (5th Cir.1992) ("In Texas ... [t]he duty owed by a professional to his client derives from their contractual relationship and requires that the professional "use the skill and care in the performance of his duties commensurate with the requirements of his profession' ") (citation omitted).

Although Arthur Young's engagement letter enumerated its duties to Western, the FDIC's breach of contract claim is not based upon specific violation of those duties. The claim merely asserts that Arthur Young violated its common law duty of due care—i.e. Arthur Young failed to apply generally accepted auditing standards. Under Texas law, this claim for breach of a professional's duty is a tort claim. Therefore, the FDIC failed to plead a set of facts to support a breach of contract claim. The district court correctly dismissed the breach of contract claim for failure to state a claim.

## VI. CONCLUSION

Applying a *de novo* standard of review, we hold that the district court properly granted EY's motion for summary judgment. Neither Woods nor Western relied upon Arthur Young's audit. Therefore, the audit was not a cause of the losses. Moreover, whether third parties relied upon the audit is legally of no significance because the FDIC sued only in its capacity as Western's assignee. The district court also properly dismissed the breach of contract claim. The contract claim as stated in the complaint is substantively the same as the tort claim and under Texas law must be brought as a tort claim.

AFFIRMED.