FEDERAL DEPOSIT INSURANCE CORPORATION, in its separate corporate capacity, Plaintiff,

v.

Ronald BROWN, et al., Defendants.

Civ. A. No. H–91–2073.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 10, 1992.

James R. Buckner, Miller & Martin, Chattanooga, TN, Kevin B. Finkel, Meredith, Donnell & Abernethy, Houston, TX, for plaintiff.

Walter B. Stuart, IV, Vinson & Elkins, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Defendant Isabel Brown Wilson seeks partial summary judgment (Docket Entry No. 92), and the remaining defendants seek judgment on the pleadings (Docket Entry No. 91) because the Texas business judgment rule precludes FDIC from suing defendants for acts or omissions as directors of RepublicBank–Houston (RBH) unless FDIC alleges that defendants' conduct was fraudulent or *ultra vires*.

All parties express familiarity with the court's April 10, 1992, memorandum opinion in *Resolution Trust Corporation v. Harry Holmes, Jr., et al.*, Civil Action No. H–92–0753. In *Holmes* the court held that the standard of care imposed by 12 U.S.C. § 1821(k) did not govern defendants' liabili-

ty since all of the acts and omissions of defendants alleged by the RTC occurred before the enactment of § 1821(k). Because this statute creates a substantive liability, it would be manifestly unjust to apply it retroactively to defendants. The same holding applies in this case.

Section 1821(k) also states that: "[n]othing in this paragraph shall impair or affect any right of the Corporation under other applicable law." The question raised by defendants' motions is what causes of action FDIC has under other applicable law. FDIC argues that the reference to "other applicable law" includes federal common law. Defendants argue that the court should adhere to its statement in *Holmes* that the reference in 12 U.S.C. § 1821(k) to "other applicable law" is limited to applicable state law. Since FDIC also argues that the defendant directors would be equally liable under Texas law or federal common law (FDIC's Second Supplemental Brief at 2), the court will first address the standard of care under Texas law since, if FDIC is correct, the choice of law issue may be moot.

■ Defendants argue that the Texas business judgment rule limits FDIC to actions for fraud or *ultra vires* conduct by defendants. As the court has explained at hearings in this action and in *Holmes*, many of the discussions of the Texas business judgment rule in the Texas cases cited by FDIC and defendants are *dicta*. The court also acknowledges that the nineteenth century origin of the business judgment rule, which predated the maze of federal statutes and regulations applicable to all corporations, and in particular to banks, may at first blush make the rule appear anachronistic or at least counterintuitive to some notions of director liability, especially when applied in the context of a public banking corporation. Nevertheless, the rule remains a viable part of Texas jurisprudence and has been applied in the context of a modern publicly held corporation. *E.g., Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 721 (5th Cir.1984). Also, notwithstanding

its age, the business judgment rule still furthers the public policy of encouraging citizens to serve as corporate directors by immunizing them from acts and omissions that in hindsight proved to be wrong, as long as the directors were not personally interested in the transaction or did not act fraudulently or contrary to their lawful authority.

■ As defendants point out, with the benefit of hindsight, the FDIC or a disgruntled shareholder could almost always allege one or more acts of negligence by bank directors in approving a bad loan. Had the directors obtained better or more current appraisals, more or better security for the loan, and had the bank better monitored the payment history of the loan and subsequent changes in the credit-worthiness of the borrower, almost any loan could have been made more secure, or at least the bank could have suffered a smaller loss on it. The business judgment rule protects bank directors from being guarantors on loans made by banks. Absent such a rule defendants argue that people with business acumen and some record of business success, who would normally make good directors, would decline election as directors, and these positions might be filled instead by judgment-proof neophytes. The rule also encourages directors to exercise their judgment in making loans and not to foreclose credit markets to all but blue-chip borrowers. Defendants argue that abolition of the rule could discourage banks from making loans to first-time borrowers and fledgling enterprises.[1]

After thoroughly analyzing the Texas business judgment rule, and requiring the parties to rebrief their arguments to eliminate citations to cases in which discussions of the rule were *dicta,* the court described the rule in *RTC v. Holmes.*

The genesis of the business judgment rule in Texas is the Supreme Court's decision in *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846 (1889). There the district court sustained the defendants' general demurrer to plaintiff's petition, and

---

**1.** The court is aware that many of the loans at issue in this case do not fall into either category.

the Supreme Court affirmed. Although the Court's opinion is not as precise as it could have been, it is clear that the Court, after deciding to treat the case as a shareholder's derivative action,[2] concluded that the negligence of a director, no matter how unwise or imprudent, does not constitute a breach of duty if the acts of the director were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved...." 11 S.W. at 849.

The breach of duty or conduct of officers and directors which would authorize, in a proper case, the court's interference in suits of this character is that which is characterized by *ultra vires*, fraudulent, and injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive of the rights of the minority, or of a shareholder, and which, without such interference, would leave the latter remediless. *Id.*

Later Texas opinions have recognized and applied this rule. *E.g., Langston v. Eagle Publishing Co.*, 719 S.W.2d 612, 616–617 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Zauber v. Murray Savings Ass'n*, 591 S.W.2d 932, 936 (Tex.Civ. App.—Dallas 1979), *writ ref'd n.r.e.*, 601 S.W.2d 940 (Tex.1980). After discussing the origin and development of the rule, the Fifth Circuit, in *Gearhart Industries Inc. v. Smith International, Inc.*, 741 F.2d 707, 721 (5th Cir.1984) concluded that "... Texas courts to this day will not impose liability upon a non-interested corporate director unless the challenged action is *ultra vires* or is tainted by fraud. (citations omitted) Such is the business judgment rule in Texas."

Although there is language from other Texas cases that discusses the duty of a corporate director in terms of ordinary care, the court has located only one case in which liability was imposed against a director for negligence. In *Meyers v. Moody*, 693 F.2d 1196, 1211 (5th Cir. 1982), *cert. denied*, 464 U.S. 920 [104 S.Ct. 287, 78 L.Ed.2d 264] (1983), a judgment against Shearn Moody, Jr., the president, chairman of the board, and majority shareholder of Empire Life Insurance Company of America, was affirmed under a number of alternative theories, including negligence, gross negligence, intentional misconduct and breach of fiduciary duty of due care in the management of the corporation. The court does not find *Meyers v. Moody* to be persuasive authority for RTC's argument, however, for two reasons. First, Moody was not a disinterested director, he was the controlling director and chief executive officer of the corporation. Secondly, there is no indication in either the district court's memorandum opinion and order, 475 F.Supp. 232 (N.D.Tex. 1979), or the Fifth Circuit's opinion that Moody ever raised the business judgment rule before the jury was charged. Therefore, the Fifth Circuit had no occasion to address whether, upon a timely motion by Moody, the district court should have required the receiver of Empire to overcome the business judgment rule by amending its complaint.

The court finds that the business judgment rule as adopted and applied by Texas courts is not merely a defense to a claim of negligence or breach of fiduciary duty against a corporate director. It is a rule of substantive law that requires a plaintiff seeking damages on behalf of a corporation against its disinterested directors to plead and prove (1) that the conduct of the directors complained of was either *ultra vires* or fraudulent or (2) that the directors had a personal interest in the transactions complained of....

In its Second Supplemental Brief in Opposition to Defendants' Motions for Partial Summary Judgment and Judgment on the

---

**2.** The court is not persuaded by FDIC's argument, for which it cites no authority, that the business judgment rule shields directors and officers in suits by shareholders for their own benefit but not in suits on behalf of the corporation, where FDIC argues that a higher standard of care should apply.

Pleadings FDIC argues that the recent opinion in *FDIC v. Wheat*, 970 F.2d 124 (5th Cir.1992), shows that the court's analysis in *Holmes* was incorrect. In *Wheat* the Fifth Circuit affirmed a jury verdict in favor of FDIC against a director of a state chartered bank for breach of fiduciary duty in connection with his approval of an inadequately secured loan. The court approved a jury instruction that characterized the business judgment rule as a defense to negligence and breach of fiduciary duty claims. Among other things the instruction approved by the Fifth Circuit stated:

> A director or officer of a bank shall not be held liable for an honest mistake of judgment if he acted with due care, in good faith, and in furtherance of a rational business purpose.

FDIC argues that *Wheat* establishes that the business judgment rule does not preclude an action for negligence against disinterested directors in the present case. *Wheat* is distinguishable from the instant case in several respects, however. First, Sudderth, the director found liable in *Wheat*, had a personal interest in the transaction for which he was found liable, thus distinguishing his situation from the various breaches of duty alleged against defendants in this case. Second, Sudderth did not argue on appeal that he did not breach his duty of care or good faith because the business judgment rule precluded liability for negligence under Texas law. According to the Fifth Circuit's opinion, he argued only that he owed no duty because (1) there was no evidence of his knowledge of the loan in question and (2) he was no longer a director of the bank when the loan closed. Third, in *Wheat* the business judgment rule was discussed only in terms of whether the jury charge was correct, not whether FDIC's allegations of negligence stated a claim. As in *Meyers v. Moody*, it does not appear that Sudderth raised the business judgment rule before the case was submitted to the jury.

It also seems doubtful that the Fifth Circuit would have intended the departure from its prior precedent in *Gearhart Industries v. Smith International* that FDIC attributes to *Wheat* without discussing the reasons for changing that precedent. (The only citation of *Gearhart* in *Wheat* occurred in footnote ten with a parenthetical "director has duties of obedience, loyalty and due care.") To accept FDIC's argument would mean that the Fifth Circuit violated its long-standing rule that one panel cannot overrule the decision of a prior panel. *E.g., Ford v. United States*, 618 F.2d 357, 361 (5th Cir.1980). This court is not persuaded by FDIC's argument as to the scope of *Wheat*, which would require the court to conclude that the Fifth Circuit intended *Wheat* to overrule *Gearhart sub silentio*.

■ However, having carefully reviewed the Texas authorities dealing with the business judgment rule, the court has concluded that its August 10, 1992, memorandum opinion in *Holmes* was erroneous to the extent that it barred claims for gross negligence against a disinterested corporate director. The court has not found any case in which a Texas court has so held. In addition, although the seminal Texas case of *Cates v. Sparkman*, 73 Tex. 619, 11 S.W. 846 (1889), does not expressly use the term "gross negligence," the court's statement that "injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive to the rights of the minority, or a shareholder" are not protected by the rule, 11 S.W. at 849, can be fairly interpreted as exempting from the protection of the business judgment rule grossly negligent conduct of a director, which by definition in Texas means a total or "entire want of care." *See, e.g., Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981) (defining "gross negligence").

In *Jewell v. Sal–O–Dent Laboratories, Inc.*, 69 S.W.2d 544, 546 (Tex.Civ.App.—Eastland 1934, writ ref'd), the court, although speaking in the context of conduct that would justify appointment of a receiver, held that the plaintiffs had not justified such action because they had not alleged "usurpation, fraud or gross negligence on the part of the directors." In *Jewell* the court aligned with *ultra vires* and fraudu-

lent conduct (which are both outside the scope of the business judgment rule) what it characterized as "reckless mismanagement," a term that this court concludes encompasses gross negligence. The court in *Jewell* contrasted those three types of corporate malfeasance with mistakes of judgment, which would not authorize appointment of a receiver, and which are protected by the business judgment rule.[3]

█ This court also concludes that the Texas business judgment rule does not protect a director if he abdicated his responsibility and failed to exercise any judgment.

Whatever its merit, however, the business judgment rule extends only as far as the reasons which justify its existence. Thus, it does not apply in cases, *e.g.,* in which the corporate decision lacks a business purpose, is tainted by a conflict of interest, is so egregious as to amount to a no-win decision, or results from an obvious and prolonged failure to exercise oversight or supervision. Other examples may occur.

*Joy v. North,* 692 F.2d 880, 886 (2d Cir. 1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). The business judgment rule necessarily presumes that the directors exercised their judgment. If, as explained in *Joy v. North* and as alleged in FDIC's complaint and in greater detail in its briefs dealing with defendants' limitations motions, defendants abdicated their responsibilities as directors of RBH, the court sees no reason why the business judgment rule should protect them. Although not necessarily analyzing the issue in the same manner, other courts have concluded that directors who "abdicate their managerial responsibilities" are not entitled to the business judgment rule's protection from liability. *See, e.g., Rabkin v.*

*Philip A. Hunt Chemical Corp.,* 13 Del. J.Corp.L. 1216, 1217, 1987 WL 28436 (Del. Ch.1987).

█ Since the court has determined that the Texas business judgment rule may preclude FDIC from pursuing its negligence allegations, other than to the extent that FDIC alleges that defendants abandoned their duties as directors of RBH, the court must decide whether a federal common law standard of care is applicable, and if so, whether defendants' duties are greater under federal rather than state law. Because 12 U.S.C. § 1821(k) creates a substantive standard of care, and therefore does not apply retroactively, the court must look to the law as it existed at the time of the alleged acts and omissions in this case to determine whether there existed a body of federal law that created a cause of action and imposed a federal standard of care.[4] FDIC argues that a federal common law standard of care applies because Republic-Bank–Houston was a national bank. Despite this argument and FDIC's references to numerous statutory provisions regarding federal banks, FDIC fails to mention any law that creates a federal cause of action for its claims.[5] Nor does FDIC explain why the business judgment rule would not apply if the court were to use a federal common law standard of care. In light of the jurisprudential guideline that federal common law rules are to be applied sparingly, and the Fifth Circuit's recent pronouncement in *FDIC v. Ernst & Young,* 967 F.2d 166, 169–170 (5th Cir.1992), that absent a specific statutory right, FDIC is to be treated like any other litigant, the court declines to apply a federal common-law rule.

Accordingly, Defendant Wilson's Motion for Summary Judgment (Docket Entry No.

---

3. "There is nothing in the acts charged indicating reckless mismanagement, or that the acts were not done, or authorized, in an honest exercise of the judgment of the board of directors, and in the interest of the corporation." *Jewell,* 69 S.W.2d at 546.

4. To the extent that this approach may conflict with *Holmes,* the court acknowledges that in *Holmes* it erred in its construction that "other applicable law" as used in § 1821(k) was re-

stricted to state law. The Supreme Court's recent holding in *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992), illustrates that such language should be extended to any relevant law, including federal law.

5. The court is not persuaded by the district court cases from other circuits cited by FDIC or the pre-*Erie* decisions that discuss federal common law in other contexts.

92) and Defendants' Motion for Summary Judgment on the Pleadings (Docket Entry No. 91) are GRANTED as to FDIC's claims that allege negligence and DENIED as to FDIC's claims that allege gross negligence or a total abdication of defendants' duty as directors.

█ In addition to FDIC's failure to articulate the source of its alleged federal standard of care, FDIC's complaint suffers from other defects. From FDIC's complaint the court cannot tell the origin of the various duties allegedly breached, i.e., whether tort or contract and if in tort, whether based on negligence, gross negligence or breach of fiduciary duty. In paragraphs 35 and 36 FDIC alleges a non-exhaustive laundry list of directors' duties and breaches of those duties by defendants, and then in paragraphs 41 through 44 lumps all of these duties and breaches together as justifying liability under all four of its causes of action. The court recognizes the general rule of notice pleadings, but given the importance of the business judgment defense in this case, pursuant to Fed.R.Civ.P. 12(e), the court ORDERS FDIC to replead within thirty days to allege specifically, by defendant, each act or omission for which FDIC seeks damages against that defendant and with respect to each such act and omission: (1) the specific duty implicated and if the duty is based on a contract, the precise contract and the contract language that creates the duty,[6] (2) how that duty was breached, (3) when and how that duty first damaged RBH, (4) the amount of damages, and (5) how the amount of damages was calculated.

---

**6.** Although the parties' relationship may arise from a contract, that does not mean that all breaches of a duty of care while performing under the contract are contract, rather than tort, claims. *See FDIC v. Ernst & Young,* 967 F.2d 166, 172 (5th Cir.1992).