**RESOLUTION TRUST CORPORATION, as Receiver for Caprock Savings & Loan Association, and as Receiver for Caprock Federal Savings & Loan Association, and in its corporate capacity, Plaintiff,**

v.

**COOPERS & LYBRAND, Defendant.**

No. 94 Civ. 8381 (DC).

United States District Court, S.D. New York.

Jan. 19, 1996.

Mullin Hoard & Brown, L.L.P. by John M. Brown, Joel R. Hogue, Amarillo, Texas, Ronqullo & DeWolf, L.L.P. by Jose L. Gonzalez, David Mace Robert, Dallas, Texas, Cooper,

Liebowitz, Royster & Wright by Laurence B. Liebowitz, David P. Rubinstein, Elmsford, New York, Jack W. Raines, RTC Legal Division, Dallas, Texas, for plaintiff.

Arnold & Porter by Stephen M. Sacks, Scott B. Schreiber, Andrew T. Karron, Steve J. Bloom, New York City, for defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

The Resolution Trust Corporation (the "RTC") brings this action seeking more than $112 million in damages for the alleged negligence of Coopers & Lybrand ("C & L") in auditing the December 31, 1987 financial statements of Caprock Savings and Loan Association ("Caprock"). According to the RTC, if C & L had performed the audit with the requisite professional care, it would have discovered Caprock's true financial condition and would have alerted the regulators and Caprock's board. Steps then would have been taken to stop further lending, averting the tremendous losses that followed. (*See* Compl. at ¶¶ 35–37).

The RTC brings this action both as receiver for Caprock and on its own behalf. C & L now moves to dismiss the RTC's complaint for failure to state a claim upon which relief may be granted. It argues that the RTC as receiver cannot state a claim, because Caprock's management did not rely on the allegedly negligent audit. It further argues that the RTC cannot state a claim on its own behalf, because the RTC has no standing to bring an action on its own behalf, and, even if the RTC has standing, the RTC did not rely on C & L's audit in making any payments. Because I hold that the RTC has adequately pled reliance and that it has standing to bring a tort action on its own behalf, C & L's motion to dismiss is denied in all respects.

### BACKGROUND [1]

#### A. *C & L's Audit of Caprock*

Caprock was a Texas-chartered savings and loan association, insured by the Federal Savings and Loan Insurance Corporation

---

1. On this motion pursuant to Fed.R.Civ.P. 12(b)(6), all factual allegations in the complaint are assumed to be true. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994).

(the "FSLIC"), with its principal place of business in Lubbock, Texas. (Compl. at ¶ 7). From 1980 until its collapse in 1989, Caprock evolved from a conservative residential lender with gross assets of $3.5 million into an aggressive financial operation with assets of $475 million. (Compl. at ¶ 13).

Defendant C & L is a partnership of certified public accountants doing business nationwide, with its principal place of business in New York. (Compl. at ¶ 11). C & L issued audit reports and opinions on Caprock's consolidated financial statements for the last three months of 1985 and the years 1986 and 1987. (Compl. at ¶ 15).

For the 1987 audit, C & L and Caprock entered into a written engagement agreement whereby C & L agreed to examine and report upon Caprock's consolidated financial statements for that year and to conduct its examination in accordance with the Generally Accepted Auditing Standards ("GAAS"). (Compl. at ¶ 21). As part of that agreement, C & L acknowledged the duties imposed on auditors by the Federal Home Loan Bank Board (the "FHLBB"), including its obligation to file the audit with the FHLBB. (Compl. at ¶ 22). C & L performed the audit on Caprock's 1987 consolidated financial statements and certified that they were fairly and accurately presented on the basis of Generally Accepted Accounting Practices ("GAAP"). (Compl. at ¶ 16).

Caprock's 1987 consolidated financial statements, as certified by C & L, showed that it had a positive "GAAP capital" of $10.1 million and "regulatory capital" of $11.5 million. (Compl. at ¶ 17). The true financial picture, however, was starkly different. In fact, Caprock was insolvent because: (i) its loan loss reserves were understated by over $10 million; (ii) it had improperly recognized a $1.8 million dollar gain from a year-end real estate transaction; and (iii) it had inaccurately accounted for an acquisition and thus inappropriately added $5.4 million to its capital. (Compl. at ¶ 17).

## B. *The Regulators Take Over*

On or about July 31, 1989, the FHLBB declared Caprock insolvent, appointed the FSLIC as receiver, and authorized the creation of a new federal mutual association, Caprock Federal Savings and Loan Association ("Caprock Federal"). (Compl. at ¶ 8). Substantially all the assets and certain liabilities of Caprock were transferred to Caprock Federal, and the FHLBB appointed the FSLIC as conservator of Caprock Federal. (Compl. at ¶ 8).

On August 9, 1989, the FSLIC was abolished. Sixty days later, the FHLBB was dissolved. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, Aug. 9, 1989, at §§ 401(a)(1) and (2) (codified at 12 U.S.C. § 1437 (repealed 1992)). Pursuant to FIRREA, the Office of Thrift Supervision (the "OTS") was created essentially to assume the enforcement functions of the FHLBB. *See* 12 U.S.C. §§ 1463–64. The RTC was created primarily to manage and to resolve all cases involving depository institutions that the FSLIC insured before FIRREA. 12 U.S.C. § 1441a(b)(3)(A)(i). Thus, the RTC assumed the role of receiver for both Caprock and Caprock Federal. (Compl. at ¶ 8). As required by law, when Caprock was declared insolvent and put into receivership in July 1989 and when Caprock Federal was declared insolvent and put into receivership in September 1990, the RTC advanced hundreds of millions of dollars to the receiverships to protect the insured deposits. (Compl. at ¶ 9).

## C. *The Complaint*

On November 18, 1994 the RTC filed the complaint in this action alleging two causes of action. Plaintiff captions its first claim for relief as "Professional Malpractice/Negligence/Gross Negligence" (Compl. at 33) and its second claim for relief as "Negligent Misrepresentation." (Compl. at 35). Nevertheless, it treats the claims as basically overlapping claims of negligence, *i.e.*, an allegedly negligent audit and a professional opinion based on that same audit. (*See* Pl. Mem. at 2 ("The elements of these [two] claims are essentially the same")). As discussed above, the RTC brings this action both as receiver for Caprock and on its own behalf. C & L argues that the RTC's claim as receiver must

fail, because Caprock did not rely on the audit. C & L further argues that the RTC's claims on its own behalf must fail, because the RTC has no standing to bring such an action and, in any case, did not rely on the audit.

## DISCUSSION

### A. The RTC's Claims as Receiver

■ The RTC first brings suit as receiver for Caprock and Caprock Federal. (Compl. at ¶ 10). The RTC has the same powers and rights as conservator or receiver that the Federal Deposit Insurance Corporation (the "FDIC") holds under 12 U.S.C. §§ 1821–23. *See* 12 U.S.C. § 1441a(b)(4)(A). Section 1821(d) of Title 12 provides that the receiver "shall ... by operation of law, succeed to ... all rights, titles, powers, and privileges of the insured depository institution...." 12 U.S.C. § 1821(d)(2)(A)(i) (1988 & Supp.1995).

■ The Supreme Court has interpreted § 1812(d) as empowering a receiver to "'step[ ] into the shoes' of the failed S & L...." *O'Melveny & Myers v. FDIC,* — U.S. —, —, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994). The RTC as receiver acquires no greater rights than those of the failed institution and is subject to all defenses that could have been raised under state law against the institution. *See O'Melveny & Myers,* at —, 114 S.Ct. at 2054 (holding that FDIC as receiver is subject to all defenses viable against the original party); *FDIC v. Ernst & Young,* 967 F.2d 166, 169 (5th Cir.1992) (claim by FDIC as receiver is "[e]ssentially ... a client case in which a client is suing its auditor"). Thus, the RTC must establish that Caprock could have stated a claim for negligence against C & L.

■ The parties agree, for purposes of this motion, that Texas law governs the claims as receiver. (Tr. of 6/1/95 at 28–29); *accord O'Melveny & Myers,* — U.S. at —, 114 S.Ct. at 2052–53 (noting that state law governs claims as receiver of S & L). Under Texas law, the elements of a negligence cause of action are: (i) the existence of a duty of care between the parties; (ii) a breach of that duty; and (iii) an injury proximately caused by that breach. *Lucas v.*

*Texas Indus., Inc.,* 696 S.W.2d 372, 376 (Tex. 1984). While the Texas Supreme Court has not expressly held that reliance is an element of negligence, proximate cause requires that "the act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred." *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). If no one relies on an audit, then presumably it could not be a substantial factor in causing an injury. *See Ernst & Young,* 967 F.2d at 170.

The complaint sufficiently alleges all three elements of a negligence cause of action under Texas law. First, the complaint alleges that C & L represented itself as possessing the professional competence to conduct audits in the savings and loan industry and that it agreed to do so. Hence, C & L owed Caprock and the regulators a duty of due care in conducting the audit. (Compl. at ¶ 78). Second, the complaint alleges that C & L breached its duty to use due care by: (i) substantially understating Caprock's loan loss reserves by $10 million (Compl. at ¶¶ 41–48); (ii) improperly accounting for a year-end real estate transaction, the so-called "land-flip," resulting in Caprock's wrongful recognition of $1.8 million in gain (Compl. at ¶¶ 49–60); and (iii) inaccurately accounting for Caprock's acquisition of Title USA resulting in an improper increase to Caprock's capital of at least $5.4 million. (Compl. at ¶¶ 61–71). Third, the complaint alleges that Caprock and its board relied on the audit and that consequently C & L's breach proximately caused Caprock's injuries. (*See* Compl. at 36, 37, 74, and 89).

■ C & L's primary argument is that the allegations in plaintiff's complaint establish management's knowledge of the underlying financial conditions, knowledge that under *Ernst & Young* is attributable to the S & L and thus to the RTC as its receiver. *See Ernst & Young,* 967 F.2d at 171. According to C & L, this knowledge negates any claim that Caprock relied on the audit, thereby warranting dismissal of the complaint.

In *Ernst & Young,* the FDIC brought an accounting malpractice action as receiver of a failed Texas S & L, the Western Savings Association, against Western's former ac-

countants, claiming that the accountants negligently audited Western's annual financial statements. 967 F.2d at 168, 171–72. The FDIC conceded that Jarrett E. Woods, Jr., the sole shareholder and chairman of the board of Western, did not rely on the audit because he had knowledge of Western's actual financial condition. Nevertheless, the FDIC argued that Woods's knowledge should not be imputed to Western. *Id.* at 168. The Fifth Circuit rejected this argument, holding that the imputation of knowledge was proper because, as Western's sole owner, Woods acted to benefit Western and thus himself. *Id.* at 171. Importantly, the Fifth Circuit expressly limited its holding "narrowly to the facts of this case under Texas law—*i.e.* the FDIC, as assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied." *Id.* at 172.

Although the instant case also presents a suit by the federal receiver of a failed Texas S & L alleging accounting negligence by its former auditors, *Ernst & Young* is distinguishable. Significantly, *Ernst & Young* was decided on a motion for summary judgment. Thus, the court had before it a record that included the results of discovery that explored Western's corporate structure. Conversely, the motion before me is a motion to dismiss. The complaint is silent concerning the nature of Caprock's ownership, as well as the composition of the board of directors and its relationship with management. The complaint certainly does not allege that management obstructed the audit through fraud. Nor does the complaint allege that management or board members did not rely on the audit.

 C & L argues that the complaint's references to Caprock management's accounting practices, appraisals, representations, and statements constitute an admission of knowledge sufficient to negate reliance. (*See* Compl. at ¶¶ 18, 28, 29, 43, 46, and 73). On a motion to dismiss, however, I must interpret the allegations in the complaint in the light most favorable to plaintiff. *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir.1994). I may grant a motion to dismiss only if plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Christ Gatzonis Elec. Contractor, Inc. v. New York City School Constr. Auth.*, 23 F.3d 636, 639 (2d Cir.1994).

In reviewing each of the references to management, it appears that the RTC simply alleges that management was operating Caprock. The RTC has not conceded that management impeded the audit or provided any more information than was necessary for C & L to comply with GAAP and GAAS. At this stage of the litigation there has been no discovery and the full extent of the knowledge possessed by Caprock's management and board is simply unknown. On the basis of the allegations of the complaint, therefore, I cannot conclude that the RTC can prove no set of facts that would entitle it to relief. *See Christ Gatzonis Elec. Contractor, Inc.*, 23 F.3d at 639. Accordingly, I find that the complaint adequately states a claim of negligence under Texas law and raises questions of fact on the issues of knowledge and reliance.

**B. *The RTC's Claims on Its Own Behalf***

The RTC also brings suit on its own behalf for losses that it claims were proximately caused by C & L's allegedly negligent audit. (Compl. at ¶ 10). C & L moves to dismiss these claims, asserting that the RTC does not have standing to bring such an action. C & L further argues that, even if the RTC has standing to bring a negligence claim on its own behalf, the claim must fail as a matter of law, because the RTC cannot show that it relied on C & L's purportedly faulty audit.

The RTC responds that the savings provisions contained in FIRREA §§ 401(f) and (g) preserved all rights and claims of the FSLIC and the FHLBB and passed them to the "appropriate successor." The RTC asserts that pursuant to 12 U.S.C. § 1441a(b)(3) it has succeeded to the FSLIC's claim of negligent representation against C & L, which the FSLIC had standing to bring under 12 U.S.C. § 1725(c). Furthermore, the RTC argues that the FSLIC relied on the audit and thus failed to shut Caprock down, thereby

allowing Caprock to accumulate greater debts. Had Caprock been closed earlier, the RTC argues, its payments to depositors would have been substantially less.

### 1. *Standing*

■ C & L's primary argument in favor of dismissing this aspect of the RTC's claim is that Congress did not create a separate federal cause of action for the remedy plaintiff seeks. Thus, according to C & L, the RTC does not have standing to bring suit on its own behalf.

The complaint alleges that C & L sent the allegedly negligent report to the FHLBB in June 1988. At that time the RTC did not exist; instead, the FSLIC was the regulatory body responsible for insuring savings and loan institutions and was the only regulatory body that could have relied on the C & L report to its detriment.[2] Thus, any cause of action the RTC may have derives from its role as successor to the FSLIC.

There is no federal statute creating a separate federal cause of action for the remedy that the RTC seeks. Similarly, the RTC has not stated a basis for an independent action of recoupment in the interest of justice. In *O'Melveny & Myers*, the Supreme Court stated unequivocally that there is no federal policy under FIRREA that the federal deposit fund should always recover money paid out to resolve failed institutions. —— U.S. at ——, 114 S.Ct. at 2055. Furthermore, neither party cites any decision in which a court considered whether a federal regulatory agency could bring a claim in its corporate capacity on its own behalf. *Cf. Ernst & Young*, 967 F.2d at 171 (the Fifth Circuit described as critically important the failure of the FDIC to sue Ernst & Young on its own behalf or on behalf of its creditors); *FDIC v. Cheng*, 832 F.Supp. 181, 186–87 (N.D.Tex.1993) (court reasoned by "negative implication" from *Ernst & Young* that FDIC might be exempt from certain defenses if it sued in a capacity that invoked public policy considerations); *FDIC v. Nathan*, 804 F.Supp. 888, 894 n. 5 (S.D.Tex.1991) (noting that the result in *Ernst & Young* might have been different had FDIC sued in its corporate capacity, and noting that pursuant to 12 U.S.C. § 1821(d)(2)(A) a receiver "can pursue claims on behalf of depositors, shareholders, and creditors").

Notwithstanding the lack of a statutorily created cause of action or prior judicial recognition of a suit by a regulator in its corporate capacity, I conclude that the FSLIC and the RTC, as the FSLIC's successor, may sue on their own behalf. I reach this conclusion based on three factors: (1) the language of the FSLIC's enabling statute, (2) Congress's intent that the FSLIC act as a corporation, and (3) common sense.

First, the FSLIC was created by statute in 1934. 12 U.S.C. § 1725. In establishing the FSLIC, Congress granted it the power "to sue and be sued."[3] 12 U.S.C. § 1725(c)(4) (repealed 1989). *See Reconstruction Fin. Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 85, 61 S.Ct. 485, 487, 85 L.Ed. 595 (1941) (governmental corporation that was given the power "to sue and be sued" could bring trademark action and could be held liable for costs and fees). Hence, by the express terms of the statute, the FSLIC, and thus the RTC, may sue.

■ Second, Congress intended the FSLIC to act in a manner similar to a private corporation. The FSLIC may, for example, adopt a corporate seal, have succession, make contracts, and appoint and fix the compensation of its employees.[4] 12 U.S.C. § 1725. Such a corporate body has the inherent power to bring claims against tortfeasors. *See generally* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1562, at 452 ("Although Congress can regulate the capacity of

---

2. In fact, the RTC did not make any payments as a result of Caprock's insolvency until July 1989.

3. This is virtually the same power granted the RTC under 12 U.S.C. § 1441a(b)(9).

4. Similarly, legislative history indicates that Congress intended for the RTC, as the FSLIC's successor, to have some limited capacity to operate as a legal person. *See* H.R.Conf.Rep. No. 101–222, 101st Cong., 1st Sess. (1989) (granting the RTC the authority to "enter into contracts, ... make progress payments, exercise all the usual incidents of ownership with respect to the property it acquires, sue and be sued in its corporate capacity").

 

any corporation it creates, in the absence of an express limitation the federal courts will assume that Congress intended the corporation to have complete capacity.").

Third, common sense dictates that the FSLIC had the ability to bring a negligence action. As a corporate entity, the FSLIC must have had the power to sue if it was injured by someone else's negligence. Accordingly, because Congress did not expressly limit the FSLIC's ability to bring tort claims and in fact empowered this entity to "sue and be sued," I find that the FSLIC had the power to bring common law tort actions. Accordingly, as the FSLIC's successor in interest,[5] the RTC has standing to bring a common law tort claim against C & L.

### 2. *Reliance*

C & L's other challenge to the RTC's corporate claim is that, because the FSLIC and the RTC pay insurance claims by operation of law, neither entity could have relied on C & L's report in expending funds to bail out Caprock. In other words, C & L argues, the regulators had to pay as soon as Caprock became insolvent regardless of the content and quality of C & L's report.

It is true that the RTC was required to make the payment in July 1989 as soon as it learned that Caprock was insolvent. It is also true that the RTC itself could not have relied on the report in that respect, as the report was issued over a year before the payment was made. Nevertheless, the complaint states a cause of action.

C & L provided its report to the FSLIC in June 1988. Despite the statutory provisions permitting the FSLIC and the FHLBB to reject the report, it was reasonable for them to rely on C & L's assertion that it was an accurate report completed pursuant to the requirements of GAAP. *See* 12 U.S.C. § 1437(a). The complaint alleges that, had the report been accurate, the regulators would have shut Caprock down immediately, thereby triggering the FSLIC's payment obligation. (Compl. ¶¶ 35, 88, 89). By issuing

a faulty report, however, Caprock remained in operation, all the while accumulating further debt. By the time regulators discovered that Caprock was insolvent, their payment obligation was increased by millions of dollars. Thus, under this scenario, which is alleged in the complaint, the RTC, as the FSLIC's successor, relied on C & L's report to its detriment.

Of course, through discovery it may be revealed that the regulators did not in fact rely on the report. Nevertheless, because a plausible allegation of reliance, along with the other elements of negligent misrepresentation, is contained in the complaint, the RTC's complaint is adequate as a matter of law.

### CONCLUSION

For the foregoing reasons, C & L's motion to dismiss the complaint is denied. Counsel for the parties are to appear for a status conference on February 1, 1996 at 2:30 p.m. in Courtroom 11A of the Courthouse at 500 Pearl Street.

SO ORDERED.

---

**5.** One of the RTC's duties is to "manage and resolve all cases involving depositary institutions" previously insured by the FSLIC. 12 U.S.C. § 1441a(b)(3)(A). As this claim arises out of the RTC's obligation to manage and to resolve the case involving Caprock after the latter's insolvency, the RTC is the proper plaintiff.