WARREN BROTHERS COMPANY *vs.* PEERLESS
INSURANCE COMPANY.

Suffolk. October 16, 1979. – November 16, 1979.

Present: BROWN, DREBEN, & KASS, JJ.

*Bond,* Private building project. *Mechanic's Lien,* Notice of contract,
Bond.

A claimant against a statutory lien bond must first file a notice of
contract under G. L. c. 254, § 4, in order to maintain his claim.
[720-723]

CIVIL ACTION commenced in the Superior Court on No-
vember 21, 1975.

The case was heard by *Irwin,* J., on a master's report.

*Peter F. Davis* for the plaintiff.

*Peter J. Gagne* for the defendant.

KASS, J.  Must a claimant against a statutory (G. L. c. 254, § 12, as amended by St. 1973, c. 801, § 4) lien bond first have filed a notice of contract under G. L. c. 254, § 4, to maintain his claim?  We hold that he must.

The facts necessary to decision are undisputed.  Warren Brothers Company (Warren) was a sub-subcontractor employed to do paving on a construction job in Beverly.  Its contract was with Mayco Construction, Inc., which, in turn, was a subcontractor of the general contractor, Fortin-Reliable Construction Joint Venture Company.  Warren never filed a notice of contract under G. L. c. 254, § 4. Neither Mayco or the general contractor paid Warren for its labor and materials, and Warren brought a claim against the bonding company which furnished a statutory lien bond on behalf of the general contractor.  A Superior Court judge ruled that compliance with § 4 was a condition precedent to recovery against the lien bond and entered judgment against Warren.

The form of lien bond is prescribed by G. L. c. 254, § 12, and the language accordingly required to appear in the bond provides that the principal "desires to free said land from liens for all labor . . . and materials entitled to lien protection" and that the bond "is made for the use and benefit of all persons entitled to file the documents for lien protection" as provided in c. 254.  Section 12 goes on to say that after the bond is recorded "no lien under this chapter shall thereafter attach in favor of any person entitled to the benefit of such bond" and that if a lien bond is defective in form, no party to such a bond shall be discharged from liability to any person who has "in good faith allowed his lien to be dissolved by lapse of time in reliance on the bond." The words "entitled to file documents for lien protection" and the other quoted statutory language appear to presuppose compliance with those steps which establish eligibility for asserting a lien, i.e., filing a

notice of contract and giving notice thereof to the owner of the affected land. G. L. c. 254, § 4.

But to so conclude, Warren argues, is to ignore the legislative context in which § 12 entered the statutory scheme. The present text of § 12 was inserted by § 9 of St. 1972, c. 774, entitled "An Act expediting payments to general contractors and to subcontractors and improving the flow of funds in the construction industry." That act, among other things, liberalized, from the point of view of the subcontractor, the circumstances in which, and the procedures by which, subcontractors might prosecute contract claims on public works, and allowed recovery of legal fees incurred in pursuit of such claims (St. 1972, c. 774, § 5); it authorized filing notices of contract for work and materials already furnished, thus enabling subcontractors to perfect liens for their entire jobs, rather than only for work and materials furnished subsequent to the filing of a notice of contract (St. 1972, c. 774, §§ 6, 7, and 8);[1] and it declared waivers of lien against public policy and void and unenforceable (St. 1972, c. 774, § 11).

Warren reasons that since the Legislature substantially broadened the ability of subcontractors to assert liens, the revised lien bond provisions which appear in § 12 constituted a necessary adjustment to the danger confronting owners and mortgagees that construction projects they owned or financed would be subjected to major encumbrances until all subcontractors had completed their work. Neither waivers of lien nor the absence on the record of notices of contract offered any comfort; the § 12 lien bond compensated for these burdensome risks. If we accept Warren's theory, we are to read § 12 lien bonds as an entire substitute for the lien machinery which c. 254 erects. In support of such a construction of the statute Warren calls to attention that line of deci-

---

[1] The notices of contract must be filed before completion of the work covered by the contract.

sions which stands for the principle that where "the statutory purpose is remedial in nature, it should be broadly construed to effectuate its self-evident policies." *M. Lasden, Inc.* v. *Decker Electrical Corp.,* 372 Mass. 179, 183 (1977). See *Warren Bros. Rds. Co.* v. *Joseph Rugo, Inc.,* 355 Mass. 382, 386 (1969); *LaBonte* v. *White Constr. Co.,* 363 Mass. 41, 45 (1973); *Manganaro Drywall, Inc.* v. *White Constr. Co.,* 372 Mass. 661, 664 (1977); *Floors, Inc.* v. *B.G. Danis of New England, Inc.,* 7 Mass. App. Ct. 356, 358 (1979), further appellate review granted 378 Mass. 799 (1979); and *C.C.&T. Constr. Co.* v. *Coleman Bros., ante* 133, 137-138 (1979).

While the over-all statutory purpose of St. 1972, c. 774, was to facilitate the collection of subcontractors' claims, that was not, however, the objective of the ninth section of that act, which amended the lien bond provision, G. L. c. 254, § 12. Rather, the purpose of that provision, as previously in effect and as revised by St. 1972, c. 774, § 9, was to benefit an owner of land (or anyone possessing an interest in that land) by furnishing means to keep his title free from liens. See *Rockwell* v. *Kelly,* 190 Mass. 439, 440 (1906).[2] Prior to the 1972 act, a § 12 bond served to discharge only liens based on personal labor; the revised § 12 broadened the scope of protection in a very significant manner. We find no implication in the legislation, however, of an intent to expand the class of lien claimants to subcontractors and materialmen who have not filed a notice of contract. Had that been the legislative intent, the language prescribed for the lien bond would have been cast so as to have the bond run to the benefit of anyone furnishing labor or materials. See G. L. c. 149, § 29, which requires a payment bond in lieu of lien rights on construction of public works. See also the form of labor and materials payment bond in Parker and Adams, The A.I.A. Standard Contract Forms and the Law 107 (1954), and a similar form in 1 Dib, Forms and Agreements for

[2] Decided under R.L. c. 197, § 28, the predecessor of G. L. c. 254, § 12.

Architects, Engineers and Contractors c. 4, § 8 (1979). Instead, a § 12 bond runs to the "benefit of all persons entitled to file the documents for lien protection."

To be entitled to lien protection under c. 254, a subcontractor must file a notice of contract under § 4. *Pratt & Forest Co.* v. *Strand Realty Co.,* 233 Mass. 314, 318 (1919). *Prunier* v. *Schulman,* 261 Mass. 417, 418 (1927). See *Evans Products Co.* v. *D. J. Dev. Corp.,* 6 Mass. App. Ct. 306, 307 (1978). The *Prunier* case emphasizes that the notice must be filed not only with the appropriate registry but a copy of the notice must be given to the owner of the land affected. The function of the notice is to establish who are potential claimants. This is a subject in which the principal (the general contractor) and the surety (the bonding company) on the lien bond have a lively interest. Without such a notice they may well not know who the sub-subcontractors are and have no basis for holding back an appropriate retainage from the intervening subcontractor. Warren overlooks this practical consideration when it argues that the filing of a lien bond makes compliance with G. L. c. 254, § 4, a useless formality, serving no purpose other than to clutter the registries of deeds.

Moreover, that portion of § 12 which protects a subcontractor against a defect in a lien bond "who has in good faith allowed his lien to be dissolved by lapse of time in reliance on the bond" makes sense only if there is a lien subject to dissolution by reason of the failure to take the follow-up steps required by c. 254 for perfecting a lien. As we have seen, no lien exists for a subcontractor unless the notice provisions of § 4 have been complied with.

*Judgment affirmed.*