GETTENS ELECTRIC SUPPLY CO., INC. *vs*. W. R. C.
PROPERTIES, INC.

Worcester.   December 17, 1985. — February 27, 1986.

Present: ARMSTRONG, CUTTER, & FINE, JJ.

*Mechanic's Lien.*

In an action by a wholesale distributor of electrical equipment and supplies
  to enforce a lien under G. L. c. 254, § 4, it was held that a series of
  invoices and purchase orders pursuant to which materials were supplied
  to an electrical subcontractor did not constitute a "written contract"
  within the meaning of § 4 and that, consequently, no statutory lien was
  established. [660-661]

CIVIL ACTION commenced in the Superior Court Department
on July 27, 1984.

A motion for summary judgment was heard by *Herbert F.
Travers, Jr.,* J.

*Joseph H. Reinhardt* for the plaintiff.
*Hugh V. A. Starkey* for the defendant.

CUTTER, J. Robert Elder Associates (the general contractor)
made a contract with W. R. C. Properties, Inc. (WRC), for
the construction of a building in Westborough owned by WRC.
Gettens Electric Supply Co., Inc. (Gettens), is a wholesale
distributor of equipment and supplies used in installing electri-
cal systems. Joseph G. Pirani, Inc. (Pirani), prior to March
16, 1984, had been engaged in performing electrical work as
a contractor and subcontractor.

The Westborough project was carried out in two stages (a)
the erection of the building shell, and (b) the construction of
interior office spaces upon specifications of the prospective
tenant of each such space. The general contractor submitted a
separate bid to WRC for the construction of each tenant office
as a lease for that space was effected. The general contractor
engaged Pirani as a subcontractor to do the electrical work for

many of the office spaces. Each such subcontract was limited to the work at a particular office space (although Gettens denied an allegation to this effect), as were the (second stage) prime contracts between the general contractor and WRC.

Pirani purchased from Gettens electrical equipment and supplies for each office space job but Gettens formally admitted on January 18, 1985, under Mass.R.Civ.P. 36(a); 365 Mass. 795 (1974), that "[n]o entire contract for the supply of electrical materials by Gettens to Pirani was . . . executed with regard . . . to the . . . [Westborough] project." In any event, Gettens supplied to Pirani electrical equipment and materials for use in various office space projects and delivered the equipment and materials at WRC's Westborough project.

By March 17, 1984, Pirani owed Gettens $24,310.97, in the aggregate, for electrical equipment and materials furnished by Gettens through March 7, 1984, for use on several office space subcontracts between the general contractor and Pirani. This equipment and material had been furnished by Gettens under about 223 invoices of Gettens or purchase orders issued to or by Pirani. WRC had paid the general contractor amounts which would cover all or subtantially all of such purchase orders and invoices and the general contractor had paid those amounts to Pirani.

On March 19, 1984, Gettens filed in the appropriate registry of deeds a notice of contract under G. L. c. 254, reciting that "by virtue of a *written contract,* dated July 25, 1983, and supplemental writings through . . . March 7, 1984, between Gettens . . . and . . . Pirani, Gettens is to furnish or ha[d] furnished material to be used" (emphasis supplied) by Pirani as subcontractor on the Westborough project for the general contractor and for WRC's benefit. On June 5, 1984, Gettens filed in the same registry its statement of claim. A copy of each of these documents was sent to WRC, the "notice of contract" on March 19, 1984, and the statement of claim probably about June 5. On July 27, 1984, Gettens brought in the Superior Court against WRC and Pirani the present complaint to enforce Gettens's asserted lien under c. 254. This complaint was recorded in the same registry on September 6, 1984.

WRC's motion for summary judgment was allowed on April 11, 1985. On May 13, 1985, a judge of the Superior Court found that there was no just reason for delaying the entry of judgment. The alleged lien was ordered dissolved. Gettens appealed.

1. To enforce a lien under G. L. c. 254, "[s]trict compliance with the statutory terms is necessary." See *Baltimore Contractors, Inc.* v. *Dupree,* 352 Mass. 83, 85 (1967, where the failure to specify a definite completion date of the contract was held not to comply with c. 254, § 2); *Warren Bros.* v. *Peerless Ins. Co.,* 8 Mass. App. Ct. 719, 720-723 (1979, failure to file notice of contract with the owner bars relief under c. 254 to the supplier). See also *Valentine Lumber & Supply Co.* v. *Thibeault,* 336 Mass. 411, 413 (1957), and cases cited.

General Laws c. 254, § 4, as in effect prior to St. 1984, c. 355, § 2, provides that one who "subsequent to the date of the original contract furnished labor or material . . . *under a written contract* with a contractor, or *with a subcontractor* of such contractor, may file in the [appropriate] registry of deeds . . . a notice of *his* contract" (emphasis supplied). In such a notice there must be included the words, *"Said contract* is to be completed on or before" a date to be specified in the notice. The written contract referred to in the portion of § 4 quoted above, and the words "such contract," "sub-contractor," and "contract," where used in other possibly relevant parts of § 4, quoted in the appendix to this opinion, seem to us to refer to a written contract between the material supplier and the subcontractor to whom materials have been supplied.

The question whether there existed such a "written contract" is controlled by Getten's admission already mentioned (that "no entire contract for the supply of electrical materials by Gettens to Pirani was . . . executed" and that the "written contract" mentioned in Gettens's complaint referred only to "223 purchase orders and/or [*sic*] invoices"). We think that the provision in § 4 that the notice of contract be of a "written contract," means an entire and continuing arrangement in writing between a supplier and a subcontractor, as, for example, a requirements contract satisfying G. L. c. 106, § 2-306. It does not mean to us merely a series of purchase orders and

invoices issued from time to time (without any preexisting written agreement imposing on either the supplier or the subcontractor, or both of them, an obligation thereafter to issue or to receive any such orders and invoices.[1] Because no "written contract" between Gettens and Pirani had been shown, Gettens has not proved compliance with c. 254, § 4. No lien has been established on WRC's property.

2. In view of what has been said, we need not consider whether Gettens has also failed to comply with c. 254, (a) by including in the notice of contract filed on March 19, 1984, a somewhat arbitrarily selected completion date of August 1, 1984, when Gettens well knew that it had made its last delivery of supplies to Pirani on March 7, 1984, and that Pirani "on March 16, 1984 . . . [had] ceased business operations;"[2] (b) by

---

[1] Gettens inappropriately relies on *Waltham Truck Equip. Corp.* v. *Massachusetts Equip. Co.,* 7 Mass. App. Ct. 580, 583 (1979), which (so far as here pertinent at all) merely affirmed a trial court conclusion that three letters sufficiently reflected an oral agreement to permit the arrangement to be enforced under G. L. c. 106, § 2-201, there the applicable Statute of Frauds. The *Waltham* case did not hold that the arrangement was a written agreement which could give rise to a lien under c. 254, § 4. In *Lampasona* v. *Capriotti,* 296 Mass. 34, 37-40 (1936), work and supplies, for which a lien was allowed under c. 254, were largely provided under a written contract later modified orally to cut out some of the work. Recovery for extra work done pursuant to an oral modification was effected solely because the court ruled that payments made by the purchaser should be applied to the charges for that extra work which had been done early in the performance. *Id.* at 40-41. Chapter 254 has been amended since the *Lampasona* case to permit a lien for work done under a *written* contract prior to filing the notice of contract in the registry. See *Rheem Mfg. Co.* v. *Monsanto Co.,* 6 Mass. App. Ct. 461, 462-464 (1978).

[2] An affidavit of Gettens's president stated that Pirani's subcontracts (for office spaces) with the general contractor contained no completion date. Even if there had been a "written" basic contract between Pirani and Gettens (and we hold in part 1 above that no such written contract did exist), Gettens's selection of a completion date of August 1, 1984, for insertion in the March 19 notice of contract would not have complied with c. 254, §§ 2 and 4. See *Pratt & Forrest Co.* v. *Strand Realty Co.,* 233 Mass. 314, 320 (1919). See also the *Baltimore Contractors, Inc.,* case, 352 Mass. at 85-86; *Warren Bros.* v. *Peerless Ins. Co.,* 8 Mass. App. Ct. at 723. To uphold an apparently arbitrary selection of a completion date would make it possible for a supplier unconscionably to file a notice of contract after he knew that all his performance had been completed for a subcontractor

filing as late as June 5, 1984, in the registry of deeds a copy of its statement of claim which under c. 254, § 8, should have been filed within thirty days after the last performance by Gettens on March 7, 1984; or (c) by filing as late as September 6, 1984, in the registry an attested copy of the complaint as required by c. 254, § 5. We assume that, because no time for the filing of a copy of the complaint is specified in § 5, the filing would have to be within a reasonable time after the filing of the complaint in the trial court.

*Judgment affirmed.*

APPENDIX.

PORTIONS OF G. L. c. 254, § 4, NOT QUOTED
IN THE BODY OF THIS OPINION.

Other portions of § 4 (prior to its amendment, not here pertinent, by St. 1984, c. 355, § 2) read (all emphasis supplied): "A notice of any extension of *such contract,* stating the date to which it is extended, shall also be filed or recorded in said registry prior to the date stated in the notice of the contract for the completion thereof.

"Upon filing a notice, as hereinbefore provided, *and giving actual notice to the owner of such filing,* the sub-contractor shall have a lien to secure the payment of all labor and material, *which he is to furnish or has furnished* upon the building or structure, and upon the interest of the owner, as appears of record at the time of such filing, in the lot of land on which said building or structure is situated. But *such lien shall in no event exceed the amount due or to become due under the original contract when notice of the filing of the sub-contract is given by the sub-contractor to the owner; and the time for the performance of the contract of the sub-contractor shall not be extended beyond the time for the performance of the original contract and any extension thereof,* if the objection thereto of the owner is filed in the registry of deeds and actual notice of such objection is given by the owner to the sub-contractor within five days after the owner received notice of the filing of the contract as provided in this section.

no longer in business or who had become insolvent, see *Rheem Mfg. Co.* v. *Monsanto Co.,* 6 Mass. App. Ct. at 464, 465, and at a time too late for the owner to know the identity of the supplier or to take precautions to hold back enough funds to meet the supplier's possible claims against a delinquent subcontractor.

" . . . .

"*If the contract does not contain a completion date, the person filing the notice of contract* in the registry of deeds *shall set forth a date of completion which shall be subject to objection by the owner as set forth above [X] if the date of completion is later than the time for the performance of the original contract and any extension thereof.* For the purposes of this chapter the date of completion stated in the notice of contract filed in the registry of deeds or in any properly filed notice of extension of such contract shall be the date on which the contract is to be performed."

WRC, as "owner" under the final paragraph of § 4 (see the language following point [X] above) could object to the completion date set forth in Gettens's filed notice of contract only "if . . . [that] date of completion is later than the time for performance of the original contract and any extension thereof." As August 1, 1984, was not shown on this record to be later than the date of completion of any subcontract between the general contractor and Pirani or any such contract between WRC and the general contractor, WRC was not required (by the precise terms of § 4) to object to the completion date stated in the notice.