425 Mass. 63 (1997)                                63

Sunrise Properties, Inc. *v.* Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.

SUNRISE PROPERTIES, INC. *vs.* BACON, WILSON, RATNER,
COHEN, SALVAGE, FIALKY & FITZGERALD, P.C., & another[1]
(and a companion case[2]).

Hampshire. February 3, 1997. - May 21, 1997.

Present: WILKINS, C.J., LYNCH, O'CONNOR, FRIED, & MARSHALL, JJ.

*Insurance,* Legal malpractice insurance. *Corporation,* Officers and agents.
 *Agency,* Agent's knowledge, Attorney at law, Scope of authority or employ-
 ment. *Attorney at Law,* Malpractice. *Contract,* Insurance.

An individual who was president and comanager of a professional corpora-
 tion, and who was acting within the scope of his employment when he
 learned of circumstances that might give rise to a negligence claim against
 both him and the corporation, was an agent of the corporation and his
 knowledge was thus imputed to the corporation; as a consequence, when
 the agent failed to share his knowledge with the corporation resulting in
 the corporation's noncompliance with the notice provisions of its liability
 insurance policy, the insurer was relieved of any obligation to the corpora-
 tion or its assignees under the policy. [66-69]

CIVIL ACTIONS commenced in the Superior Court Department
on August 14, 1991, and March 3, 1993, respectively.

Following entry of judgment in the first action, a motion for
an order directing payment of the judgment and a second action
seeking declaratory relief were consolidated and heard by *Bertha
D. Josephson,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Erik Lund (Laurence Field* with him) for New England Insur-
ance Company.

*Paul S. Weinberg (Paul H. Rothschild* with him) for Sunrise
Properties, Inc., & others.

LYNCH, J. This appeal arises from an action brought by

---

[1]Michael S. Ratner.

[2]New England Insurance Company *vs.* Sunrise Properties, Inc., & others.

Sunrise Properties, Inc. (Sunrise), against Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, a professional corporation (Bacon Wilson) engaged in the practice of law, and Michael S. Ratner, a shareholder of Bacon Wilson and at all relevant times its president and comanager. Sunrise claimed that Ratner had negligently conducted a title examination. The parties entered into a settlement agreement. Bacon Wilson acknowledged that there was sufficient evidence to warrant an entry of judgment against it, and Sunrise received an assignment of Bacon Wilson's rights under their professional liability insurance policy with New England Insurance Company (New England). A judge in the Superior Court entered judgment for Sunrise in the amount of $450,000 against Bacon Wilson which, under the settlement agreement, was only collectible against New England.[3]

Following the entry of judgment, Sunrise moved pursuant to Mass. R. Civ. P. 69, 365 Mass. 836 (1974), for an order directing New England to satisfy the judgment. New England commenced a declaratory judgment action seeking a determination that under the policy Bacon Wilson was not covered for this loss. The cases were consolidated and on the parties' cross motions for summary judgment the judge allowed Sunrise's motion for summary judgment. We granted New England's application for direct appellate review. We vacate the order of the Superior Court granting summary judgment to Sunrise and conclude that an order allowing New England's summary judgment motion should be entered.

*Facts.* The parties stipulated to the following facts. Between April 1, 1986, and March 30, 1991, Bacon Wilson was a professional corporation with Ratner as its president and a shareholder. New England issued to Bacon Wilson a lawyer's malpractice policy with a policy period from April 1, 1990, to March 31, 1991. The policy was a claims-made policy, providing coverage for claims "first made against the Insured and reported to the Company during the policy period."[4] Insureds under the policy included the professional corporation and

---

[3]The amount was subsequently reduced by agreement of the parties to $376,000, plus interest and costs.

[4]The insuring agreement portion of the policy provided that New England would "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of any claim or claims . . . first made against the Insured and reported to [New England] during

any lawyers who were stockholders or members of the professional corporation. Notice under the policy was to be given "as soon as practicable" after the insured became aware of any act, error, or omission which could reasonably be expected to be the basis of a claim against the insured. The policy, however, also contained a so-called "innocent insured" provision, which provided that, whenever coverage under any provision of the policy would be lost because of noncompliance with a condition relating to the giving of notice, insureds who did not "personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts, errors or omissions" would remain covered under the policy.[5]

Sunrise first made a claim against Ratner between November 30, 1987, and January 23, 1989. Within that same period, Sunrise "through its oral communications and dealings with Ratner . . . first made a demand for money or services to be provided by Bacon & Wilson." The parties also agree that Ratner was aware, by November 30, 1987, of circumstances that might give rise to a claim by Sunrise against Bacon Wilson. During this time, however, Ratner did not communicate the existence of any claim to the other officers or shareholders of Bacon Wilson. Moreover, although Ratner was aware of the possibility of a claim against Bacon Wilson by November 30, 1987, the claim was not reported to New England until December 6, 1990, when Ratner, on Bacon Wilson letterhead, finally sent a report to New England. The report to New England enclosed a claim letter, dated November 30, 1990, from Sunrise to Ratner regarding the

the policy period, or extended reporting period if elected by the Insured . . . except as excluded or limited by the terms, conditions and exclusions of this policy."

[5]Condition III of the policy provided: "Whenever coverage under any provision of this policy would be excluded, suspended or lost . . . (b) because of noncompliance with any condition relating to the giving of notice to [New England] with respect to which any other Insured shall be in default solely because of the default, or concealment of such default, by one or more Insureds responsible for the loss or damage otherwise insured hereunder; [New England] agrees that such insurance as would otherwise be afforded under this policy shall continue in effect, cover and be paid with respect to each and every Insured who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts, errors or omissions described in any such exclusion or condition. . . ."

claim against Bacon Wilson. After initially defending Sunrise's claim, New England disclaimed coverage, asserting that, because the claim was made to Bacon Wilson but not reported to New England during an earlier policy year, it was not a "claim" under the 1990-1991 policy.[6]

*Discussion.* Sunrise argues that, while ordinarily under the terms of the insuring agreement a claim must be reported to the insurer by the insured during the policy period in order to be covered, Condition III of the Agreement, the so-called "innocent insured" provision, waives the consequences of failing promptly to report a claim to the insurer where neither the other shareholders nor the corporation knew of the claim. Moreover, according to Sunrise, under the terms of the policy, Bacon Wilson cannot be deemed to have known of any claim against it because the terms of the insurance contract allow recovery for innocent insureds and recognize that the individual shareholders and the professional corporation were all separate and potentially innocent insureds under the contract. Thus, according to Sunrise, any arguments based on agency principles are irrelevant. Sunrise further argues that, even if agency principles were relevant, Ratner's knowledge should not be imputed to the professional corporation because he was acting adversely to the corporation. We disagree.

A corporation is a separate and distinct legal entity. See *Spaneas* v. *Travelers Indem. Co.*, 423 Mass. 352, 354 (1996); *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 625-626 (1990). A corporation, however, can only act through its agents. See *Commonwealth* v. *L.A.L. Corp.*, 400 Mass. 737, 743 (1987); *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972).

Under agency principles, notice to a corporation's agent is notice to the corporation. "When an agent acquires knowledge in the scope of [his] employment, the principal . . . is held to have constructive knowledge of that information." *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983), citing *Bockser* v. *Dorchester Mut. Fire Ins. Co.*, 327

---

[6]Between April 1, 1987, and March 31, 1990, New England had issued three other lawyer's malpractice policies to Bacon Wilson (i.e., three policy years prior to the 1990-1991 year at issue here). The policy forms were identical in all material respects.

425 Mass. 63 (1997)                                    67

Sunrise Properties, Inc. *v.* Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.

Mass. 473, 477-478 (1951), and *Union Old Lowell Nat'l Bank* v. *Paine*, 318 Mass. 313, 323-324 (1945). *Juergens* v. *Venture Capital Corp.*, 1 Mass. App. Ct. 274, 278 (1973) (corporate officer's knowledge of transaction was constructive notice to corporation). However, an agent's knowledge of his own unauthorized acts is not imputed to the principal when the agent has acted fraudulently toward the principal and is engaged in an independent fraudulent act from which the principal does not benefit. *Tremont Trust Co.* v. *Noyes*, 246 Mass. 197, 207 (1923). See Restatement (Second) of Agency § 282 (1958) ("[a] principal is not affected by the knowledge of an agent in a transaction in which the agent secretly is acting adversely to the principal and entirely for his own or another's purposes").

Ratner, as president and comanager of Bacon Wilson, was an agent of Bacon Wilson who was acting within the scope of his employment when he learned of circumstances that might give rise to a claim against both him and Bacon Wilson.[7] Thus, under ordinary agency principles, Ratner's knowledge is imputed to Bacon Wilson.[8]

This conclusion cannot be avoided by Sunrise's argument that Ratner's knowledge is not imputable to Bacon Wilson because he was acting adversely toward Bacon Wilson. The Restatement (Second) of Agency, *supra* at § 282 (2) (a), provides that the principal is affected by the knowledge of an agent who acts adversely to the principal if "the failure of the agent to act upon or to reveal the information results in a violation of a contractual or relational duty of the principal to a person harmed thereby." Clearly, Ratner's failure to share his knowledge resulted in Bacon Wilson's noncompli-

---

[7]While ordinarily whether an individual is acting within the scope of employment is a question for the jury, *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983), Sunrise does not contend that Ratner was ever acting beyond the scope of his employment in his dealings with Sunrise. Indeed, if Ratner was not the correct person to be notified by Sunrise regarding the circumstances of the malpractice allegations, then it is difficult to conceive who should have been notified. Moreover, when ultimately it became necessary to notify New England that a claim had been asserted against Bacon Wilson, it was Ratner who performed that task. Thus, Sunrise's argument is that Ratner's knowledge cannot be imputed to Bacon Wilson because, as a matter of law, the contract prohibited such an imputation. See *infra* at 68-69.

[8]The action against Ratner is not before us; it is agreed that the policy does not cover him.

ance with the terms of the insurance contract, and such delay, by its very nature, adversely affects an insurer issuing a claims-made policy.[9] *Tenovsky* v. *Alliance Syndicate, Inc.*, 424 Mass. 678, 681 (1997).

Because, as a matter of law, Bacon Wilson knew of circumstances that could reasonably be expected to result in a claim by January of 1989, it was obligated to report the claim as soon as was practicable within the 1988-1989 policy year.[10] Failure to do so relieved New England of any obligation to Sunrise arising under the policy. Because Bacon Wilson is deemed to have knowledge of the claim, it is afforded no relief under the innocent insured provision of the policy. Indeed, while Sunrise argues that a corporation cannot "personally" commit or participate in any wrongdoing contemplated by the innocent insured provision, a corporation cannot absolve itself of its agent's wrongdoing by hiding behind the corporate shield. See *Commonwealth* v. *L.A.L. Corp.*, *supra* at 743 (corporation may be criminally liable for wrongdoings of its agents); *United States* v. *Bank of New England*, 821 F.2d 844, 856, cert. denied, 484 U.S. 943 (1987) (knowledge obtained by corporate employees acting within scope of their employment is imputed to corporation, in context of corporate criminal liability).

That the insurance contract recognized that both the professional corporation and individuals were separate insureds under the contract does not, as Sunrise argues, compel the conclusion that Ratner's knowledge cannot be imputed to the corporation as a matter of contract law. Insuring both the

---

[9]To the extent Sunrise argues that Ratner was acting not only adversely to Bacon Wilson, but fraudulently as well, we note that Restatement (Second) of Agency § 282 (2) (1958) also encompasses such a situation. Indeed, where, as here, New England was affected by Ratner's allegedly fraudulent behavior, the comment to § 282 (1), *supra* at 612, provides that, "a principal may be liable for the fraud of an agent who is acting entirely for his own purposes but who, to the defrauded party, is apparently acting for the principal." Moreover, the comment to § 282 (1) provides that, "[i]f, however, the agent fails to reveal [a relevant] fact in order to accomplish some fraud of his own antagonistic to the interests of the principal, the principal is not bound . . . subject to exceptions similar to those stated in Subsection (2)." See *National Credit Union Admin.* v. *Ticor Title Ins. Co.*, 873 F. Supp. 718, 762 (D. Mass. 1995).

[10]Sunrise does not appear to dispute that, if Ratner's knowledge is imputable to Bacon Wilson, a claim against Bacon Wilson within the meaning of the policy was made by 1989.

corporation and individual shareholders under the contract recognizes that both the professional corporation and its individual shareholders may be liable in certain circumstances. See S.J.C. Rule 3:06 (3), as appearing in 421 Mass. 1306 (1996). There is nothing about the policy that would overrule the long-standing principle that a corporation is a separate entity that can only act through its agents. To conclude otherwise would run counter to the principle that a corporation should not be allowed to "assume the benefits of the corporate form and then disavow that form when it is to their and their stockholders' advantage." *Spaneas* v. *Travelers Indem. Co.*, 423 Mass. 352, 354 (1996), quoting *Berger* v. *H.P. Hood, Inc.*, 416 Mass. 652, 658 (1993), *S.C.*, 424 Mass. 144 (1997).[11]

Contrary to Sunrise's assertions, our interpretation of the policy does not render the innocent insured provision meaningless and deprive Bacon Wilson of the benefits of its bargain. By concluding that Bacon Wilson is not covered because the claim was not reported as required, we offer no opinion on the policy's applicability as to other insureds who may be personally liable.

The judge's order is vacated and the case is remanded to Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[11]Sunrise relies heavily on *Jensen* v. *Snellings*, 841 F.2d 600, 617-618 (5th Cir. 1988), where the court concluded that the knowledge of a lawyer who was a partner in a firm was not imputable to the law firm. We do not find this case persuasive, however, because the court reached this conclusion without any discussion as to why the partner's knowledge is not imputable to the firm or how a firm would acquire knowledge if knowledge of a partner is not sufficient. *Id.*