Kaplan, Mitchell H., J.
This derivative action arises out of plaintiffs’ investment in two feeder hedge funds, Dutchess Private Equities, L.P. (Dutchess LP), a Delaware limited partnership, and Dutchess Private Equi *624 ties Cayman Fund, Ltd. (Dutchess Ltd.), a Cayman Islands exempt corporation. These feeder funds fed a master fund, Dutchess Private Equities Fund, Ltd. (Master Fund), also a Cayman Islands exempt corporation, which made all investments. Plaintiffs are certain of the limited partners of Dutchess LP and shareholders of Dutchess Ltd. They generally allege that the defendants, who controlled or were involved in the funds’ operation, caused injury to the funds by causing the Master Fund to invest in companies that were financially at risk and did not meet the funds’ stated investment strategy in order to enrich themselves through fees paid from the portfolio companies and the Master Fund to entities they owned and controlled. The limited partner plaintiffs of Dutchess LP (LP Plaintiffs) separately assert that Sullivan Bille negligently audited Dutchess LP’s financial statements and issued unqualified audit reports certifying its financial statements, which prevented them from discovering and putting a stop to the improper investments. In the motion presently before the court, Sullivan Bille moves for summary judgment on the accounting malpractice claim brought against it. For the reasons that follow, the motion is DENIED.
BACKGROUND
The following facts are either undisputed for the purposes of this motion or viewed in the light most favorable to the LP Plaintiffs, as the non-moving party. It should be noted that Sullivan Bille does not concede its negligence, but only acknowledges that its purported malpractice is not an issue that can be resolved on the summary judgment record before the court.
Dutchess LP is a limited partnership formed in 2000 and is the onshore feeder fund that solicited investments from investors located in the United States. In 2007, Dutchess Private Equities Fund II, L.P., a Delaware partnership formed in 2004, merged into Dutchess LP by contributing its net assets.
LP Plaintiffs, Mark Wenzel, the Trustees of the Geraldine K. Schwab Revocable Trust, and the Car-rswold Partnership, are limited partners of Dutchess LP. The General Partner and Investment Manager of Dutchess LP is defendant Dutchess Capital Management, LLC (DCM), an entity controlled by defendants Douglas Leighton and Michael Novielli. Leighton and Novielli are the only two members of DCM and hold equal interests in the company. Defendant Theodore Smith is DCM’s Chief Operating Officer.
At some point, Leighton, Novielli, and Smith (through DCM) began investing in financially distressed companies that did not meet Dutchess LP’s stated investment profile and requiring these companies to place them on their boards of directors. They did this to enrich themselves through board member compensation and by causing the companies to enter into lucrative arrangements with businesses they owned. The fees for one of those businesses, defendant Dutchess Advisors, LLC, were ultimately paid for with the capital invested by DCM in these companies.
In putting together the financial statements for Dutchess LP, DCM valued these investments at cost (i.e., the amounts paid for the interests) rather than at fair value as required under Generally Accepted Accounting Principles, resulting in inflated valuations. The inflated valuations enabled Leighton, Novielli, and Smith to conceal their improvident investments and DCM to charge higher management fees, which were based, in part, on the value of the Master Fund’s holdings.
In 2006 and 2007, Sullivan Bille audited Dutchess LP’s financial statements for the years 2005 and 2006, respectively, and provided unqualified audit opinions for those periods. For purposes of this motion only, Sullivan Bille does not contest that its audits were not performed in accordance with Generally Accepted Auditing Standards and were otherwise negligently conducted.
Beginning in 2007, Dutchess LP’s reported financial performance declined, prompting significant redemption requests from investors. In response, DCM froze the investors’ redemption rights in February 2008. This was followed a few months later by large write-downs for a number of Dutchess LP’s investments, in particular the value of the investments made in the companies in question. Shortly thereafter, one of the companies in which the Master Fund had made its largest investment, Challenger Powerboats, Inc., filed a bankruptcy petition.
DISCUSSION
The LP Plaintiffs bring a single derivative claim for professional malpractice against Sullivan Bille in connection with its audits of Dutchess LP for years 2005 and 2006. They maintain that had Sullivan Bille issued qualified audit opinions, they would have discovered Leighton, Novielli, and Smith’s misconduct and could have prevented some of the losses Dutchess LP sustained as a result of the improper investments. In the pending motion, Sullivan Bille argues that it is entitled to summary judgment because, even assuming that its audits were negligently performed and its unqualified opinions improperly issued, the LP Plaintiffs cannot prove two of the other essential elements of a professional malpractice claim, namely causation and damages.
Sullivan Bille first contends that the LP Plaintiffs cannot establish that it caused Dutchess LP any injury because it is undisputed that DCM, the general partner, was aware of any misstatements in the financial reports and, therefore, clearly did not rely on the audits in making investment decisions. In similar vein, Sullivan Bille argues that the LP Plaintiffs’ malpractice claim is barred by the in pari delicto doctrine because DCM prepared the financial statements upon which the audits were performed and was therefore at least as culpable as Sullivan Bille for the allegedly improper *625 audits and audit opinions. Lastly, it asserts that the LP Plaintiffs have failed to provide competent evidence either that they could or would have taken action to prevent Dutchess LP’s losses had Sullivan Bille issued qualified opinions on the financial statements, or that Dutchess LP sustained damages as a result of Sullivan Bille’s alleged negligence.
A. Reliance and the In Pari Delicto Doctrine
Sullivan Bille’s reliance and in pari delicto arguments presume that DCM’s knowledge must be imputed to Dutchess LP. In general, the knowledge of an agent acting within the scope of its employment is imputed to the principal. Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 66 (1997). However, under the so-called adverse interest doctrine, “an agent’s knowledge of his own unauthorized acts is not imputed to the principal when the agent has acted fraudulently toward the principal and is engaged in an independent fraudulent act from which the principal does not benefit.” Id. at 67; see also Baena v. KPMG LLP, 453 F.3d 1, 7 (1st Cir. 2006) (“imputation maybe avoided where the wrongdoing is done primarily for personal benefit of the officer and is ‘adverse’ to the interest of the company”) (emphasis supplied). The Court cannot conclude, as a matter of law, that imputation is mandated in this case and, therefore, that the adverse interest doctrine does not apply.
In arguing that DCM’s knowledge must be imputed to Dutchess LP, Sullivan Bille primarily relies on three cases in which the First, Fifth, and Seventh Circuit Courts of Appeal dismissed auditor malpractice claims after determining that the adverse interest exception did not apply and concluding that the conduct of company managers was attributable to the company itself. See Baena, 453 F.3d at 6-8; FDIC v. Ernst & Young, 967 F.2d 166, 170-72 (5th Cir. 1992); Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 454-56 (7th Cir. 1982). Sullivan Bille’s reliance on these decisions is unconvincing, as each one involved circumstances and considerations very different from those presented here.
In Baena, the First Circuit found that imputation was appropriate, and therefore that the in pari delicto defense applied, because the record before the court indicated that the alleged inflation of earnings by “top management” were actions undertaken, not primarily to benefit themselves, but rather to benefit the corporation by facilitating stock sales and acquisitions (although the company’s success would have also benefitted management in the long run).[4] Unlike that case, the summary judgment record before this court raises a disputed factual question concerning whether the investments in the portfolio companies here at issue were principally intended to benefit Dutchess LP, either in the short term or long term, as opposed to serving as a means for Leighton, Novielli, and Smith to themselves profit at the expense of Dutchess LP. Stated differently, a trier of fact could find that the principal purpose of the defendants’ investments in the distressed companies, which were allegedly made contrary to Dutchess LP’s investment strategy, was to provide revenue to the defendants with indifference to the precarious financial position in which they placed the funds.
Cenco is inapposite for the same reason. In that case, like in Baena, the Seventh Circuit concluded that imputation was appropriate because the fraudulent inflation of the corporation’s inventories by company officers was done to benefit the corporation (enabling inexpensive acquisitions, lower borrowing rates, and larger insurance payments) primarily at the expense of outsiders (the acquired companies, lenders, and insurers). In so ruling, the Court also emphasized that, given the facts of the case, a different result would ill serve the underlying objectives of tort liability: victim compensation and deterrence. From the standpoint of victim compensation, a judgment in favor of the corporation would permit recovery from stockholders who included the corrupt officers as well as individuals that had previously received settlement payments from the defendant auditors. From the standpoint of deterrence, a favorable judgment would provide little incentive for stockholders to hire managers who would not engage in the 1ype of fraud that causes wide spread harm to third parties. As the record before the court raises a question of fact as to whether Dutchess LP, not third parties, was the principal victim of the alleged fraud, recovery by the limited partnership would not run afoul of either tort liability objective.
Lastly, Ernst & Young is inapplicable because the court explicitly restricted its analysis to the precise circumstances before it. The Fifth Circuit held that the adverse interest exception did not apply, and that therefore the FDIC could not sue the auditors of a failed savings and loan association (S&L), because the S&L was dominated and controlled by a single owner and thus the actions that benefited him (i.e., his financial misconduct) necessarily benefited the company. As with Cenco and Baena, the main victims of the owner’s fraud were third parties, namely depositors and creditors. Moreover, in its ruling, the court limited its “holding narrowly to the facts of this case under Texas law—i.e. the FDIC, as assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied.” 967 F.2d at 172. Clearly, the same situation is not present here.
Significantly, a previous ruling by the Appeals Court in this case strongly suggests that the issue of imputation cannot be decided on the summary judgment record now before the court. At the outset of this case, Sullivan Bille filed a motion to dismiss in which it made the same reliance and in pari delicto arguments as those asserted in the pending motion. The *626 Appeals Court held, based on the allegations in the plaintiffs’ complaint, that the adverse interest exception may apply and that therefore plaintiffs’ claim survived. See Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., 84 Mass.App.Ct. 75, 96-97 (2013). While the court recognizes that the motion now before it is for summary judgment and therefore involves a review of the evidence presented by the summary judgment record, the facts conceded for purposes of this motion are not materially different from what was alleged in the complaint.
B. Evidence of Causation and Damage
In addition to its reliance and in pari delicto arguments, Sullivan Bille argues that the LP Plaintiffs have failed to provide evidence either that they would have or could have taken any action to prevent Dutchess LP’s losses had a qualified audit opinion issued or that Dutchess LP sustained any damages as a result of Sullivan Bille’s clean opinions. While the court finds that this is a very close issue, it concludes that it cannot find that there are no disputed issues of fact regarding causation and damages.
Taking all inferences in favor of the LP Plaintiffs, as the court must do at this stage, deposition testimony from plaintiff Mark Wenzel, while not particularly clear, suggests that had he and the other limited partners received a qualified audit, they would have stepped in and impeded additional investment in the problematic portfolio companies. The record also contains evidence, specifically schedules of investment, that show that after Sullivan Bille’s opinions issued, DCM made additional investments in the distressed portfolio companies. This evidence may only provide the LP Plaintiffs a toehold to establish that they would have taken action to prevent further investment and that Dutchess LP suffered damages. “A toehold, however, is enough to survive a motion for summary judgment.” Marr Equip. Corp. v. I.T.O. Corp. of New England, 14 Mass.App.Ct. 231, 235 (1982).[5]
ORDER
For the foregoing reasons, Sullivan Bille, PC’s Motion for Summary Judgment is DENIED.

 In Baena, the First Circuit also commented on the absence of appellate case law in Massachusetts addressing the issue of in pari delicto. For example, in Sunrise, a case cited by the First Circuit and relied upon by Sullivan Bille in the pending motion, the Supreme Judicial Court considered broad issues of agency, but did not mention the in pari delicto doctrine which was not implicated by that case.

 The LP Plaintiffs have also submitted putative expert testimony from Gary Goolsby in support of causation and damages. Sullivan Bille contends that Goolsby offers inadmissible testimony on causation and that his estimate of damages is based on untenable assumptions. It has moved to strike portions of his testimony from the record. Given that the evidence described above is adequate to oppose summaiy judgment, the court need not rule on the motion to strike. The court, however, is skeptical that Goolsby can offer admissible testimony as to what a particular limited partner would do on receiving a qualified opinion on Dutchess LP’s financial statements. His damages theories also appear untethered to the facts.